*Chittenden,*
January,
1797.

WILCOX *vs.* SHERWIN.

In an action of Trespass against a Town or Parish Collector, the defendant may, under the general issue, give in evidence his authority to take the property in question, in justification ; but cannot give in evidence a release of the trespass, or any other matter which does not shew the taking lawful.

THIS was an action of trespass, in which the plaintiff declared, that on the 20th of March, 1795, at Charlotte, the defendant with force, &c. took and drove away, out of the possession of the plaintiff, a certain heifer the property of the plaintiff, &c.

Plea—*Not guilty.*

The defendant's counsel admitted the facts as stated in the declaration, and stated, as matter of justification, which they should give in evidence, that there were two taxes granted by the town of Charlotte, for the support of a minister of the Gospel in that town— one tax for the year 1793, the other for the year 1794.—That the defendant was legally chosen collector of those taxes.—That the taxes were severally assessed, and the several assessments or rate bills, with a legal warrant on each, were delivered to him, for the purpose of collecting those taxes.—That the plaintiff was an inhabitant of Charlotte, and legally assessed in their rate bills ; and because the plaintiff refused to pay the taxes so assessed upon him, the defendant, by virtue of said warrants, had distrained the said heifer, and sold her, as the law in such cases directs.

*D. Chipman* and *Marsh,* for the plaintiffs, objected that matter of justification was not, in this action, admissible under the general issue. In support of the objection it was argued, that this was an action of trespass, and the motion on the part of the defendant, was, to be admitted to give matter of justification in evidence under the general issue.—That it would be necessary, in attending to the question, to inquire, what had been the general practice at common law, and to examine what convenience or inconvenience might follow a deviation from what is apprehended to be the established law in this case.

It is said to be an established rule of the common law, that in actions of trespass, every matter of justification must be specially pleaded, and cannot be given in evidence under the plea of not

guilty.—This doctrine is clearly laid down in Bac. Ab. 218, title, trespass, and is to be found in all the books.

Indeed the rule extends to every independent matter, which goes, either to justify or avoid the facts alledged in the declaration ; and the reason given for the rule is a sound one, that the matter may be first shewn to the Court, that they may determine whether it be a legal defence in the action. In this way, matters of law come separately, to be determined by the Court, the proper judges of the law ; and matters of fact go to the Jury, unembarrassed with intricate questions of law.

It is true, that in England, by the statute of James I. the rule was dispensed with, in favour of certain inferior officers, who, by that statute, were to plead the general issue in actions brought against them, for any thing done in the execution of their office, and give the special matter of justification in evidence. That a statute was necessary to introduce a partial relaxation of the rule, shews how extensive and how firmly settled was the rule of the common law in this case. In Great Britain, the inconvenience of relaxing the rule, may be much less than with us. Their trials are mostly at Nisi Prius, and the Judges have frequent opportunities, on motions for new trials, of reconsidering and correcting their decisions on the admission of evidence. With us it is different. Every question relative to the admission of evidence must be decided while the Jury are on their seats, and the Court have rarely an opportunity to consider and correct their decisions, thus made on the spur of the occasion. This difficulty will be increased, if matters which may and ought to be pleaded specially, should be permitted to be given in evidence under the general issue, as it will add greatly to the number of decisions which must be made by the Court at the moment of trial.

It must also be a surprise upon the plaintiff and his counsel. It will frequently happen that they will have no notice of the intended defence, until the evidence is produced in Court, the plaintiff can have no opportunity of confronting witnesses, and the counsel will be called to argue, and the Judges to decide upon some of the most intricate questions of law, without time for deliberate investigation. Beside, if the Judges should decide the matter of defence offered in evidence to be a sufficient justification in point of law, yet the Jury

Chittenden,
January,
1797.

Wilcox
vs
Sherwin.

may ultimately control in points of law, as well as in matters of fact. On the whole, it was contended, that to continue the common law practice, relative to the pleading of any matter of justification, specially, will have a tendency to bring matters with less perplexity before the Jury, and to establish & preserve an uniformity of decisions with the Court, in matters of mere legal import.

For the defendant, it was contended, that the practice of giving the special matter of justification in evidence under the general issue, has prevailed. It has been, however, admitted, probably by a tacit consent, as it is not known that there have been any decisions on the point in this Court. The case of Spaulding against Marsh, was of the same nature as the present action. In that case, the general issue was pleaded, and the defendant gave in evidence, a justification, precisely similar to the one now offered. It is true, no objection was made, either in the County or Supreme Court. Indeed, very few instances of special pleading, in actions of trespass, are to be found in our Courts. Yet defendants have frequently given special matter of justification in evidence under the general issue. By admitting matters of this kind to be given in evidence, the perplexity of special pleading will be avoided, and that chicanery which has been too often practised, to lead the Court and Jury from the true merits of the case. It is apprehended that what will be good and sufficient matter of justification in an action of trespass, is so clearly settled in the books, that the Court can rarely be at a loss in deciding. If this be the case, the matters of fact will come simply before the Jury, for the Court will not allow matters insufficient in point of law to go to the Jury in evidence. The Jury may, indeed, when the whole matter is before them, undertake to decide on its legal sufficiency, in opposition to the Court; but this is a disadvantage to the defendant only, which by pleading, he may avoid at his option. It is conceived, that this question does not relate so much to the principles of justice, as to the modes of obtaining it. If the mode contended for be adopted, it will not, of course, extend to all actions of trespass, but to such actions only, as may be brought against collectors of taxes, or at most, to those which may be brought against officers for any thing done in the execution of their office. In these cases, the officer will always be known, and it will likewise be known under what authority he claims to act. That he should

justify under that authority cannot be unexpected; there will, there-fore, be no danger of surprise in the case.

It was replied by defendant's counsel, It is true that the princi-ples of justice are not concerned in the present question, for it re-lates only to the fairness and convenience of the mode of obtaining justice. But it is of great consequence in the administration of jus-tice, that such mode be adopted as shall give each party a fair op-portunity to exhibit to the Court and Jury a true statement of his case, both as to law and fact. It is conceived that the few instances which have occurred of giving special matter of justification in evi-dence under the general issue, have been permitted by consent. In such case there could be no surprise on the plaintiff; but this does not prove that he would not frequently be taken by surprise, for want of a knowledge of his opponent's intended defence. It is apprehen-ded that the Court will in this case, go upon a general rule, and not upon particular exceptions in favour of collectors. For, what reason can there be why one class of people should be privileged above another ? Besides, the County Courts will follow the prac-tice adopted by this Court, and it is easy to foresee, that to call Judg-es of those Courts, frequently to decide, as it were, extempore, on some of the most intricate questions of law, will lay them under se-rious *embarrassments,* and will prove very detrimental to a steady and uniform administration of justice.

Chipman, Ch. J., delivered the opinion of the Court. This is an action of trespass, for taking with force and arms from the plain-tiff, a certain heifer the property of the plaintiff. The defendant has-pleaded the general issue, and under this-plea, offers to justify the taking in evidence to the Jury, by virtue of a legal authority, as collector of a town or parish tax. To this, objection is made by the plaintiff's counsel, on two grounds. 1st, That it is an establish-ed rule of the common law, that in actions of trespass, no matter of justification shall be given in evidence under the general issue, but that it shall be pleaded specially. 2d, That from a relaxation of the rule, great inconvenience will arise, both to the Judges and to the parties.

The rule of the common law is, certainly, as it has been stated by the plaintiff's counsel. In England the rule is extended so far, that in actions of trespass, the facts charged in the declaration can

Chittenden,
January
1797

Wilcox
vs.
Sherwin.

neither be justified nor avoided by evidence under the general issue. This, of course, introduces a multiplicity of special pleas, so that the science of special pleading has become a science of the first importance in the English Courts of common law. I conceive, however, that it is a matter of practice, not of principle—a matter of form rather than substance. It is not founded on those principles of the common law, which are the principles of common justice, and agreeable to which, decisions of right are made by Courts between man and man. These principles are universally binding in all cases which come within them ; and to these, Courts are at all times bound to adhere. The rule in question is a rule of mode, and does not directly involve the property of any individual in the community. It is one of those rules which are subject to the sound discretion of the Court, and may by them be modified and altered in such manner as they think will most conduce to the attainment of justice.

It is true that rules of practice, though they relate principally to modes and forms, ought not to be subjected to frequent alterations, nor ought alterations to be made upon slight grounds. But where there exist substantial reasons for it, the Court have both the power and the right to make the necessary alterations. The English Courts, at least in former times, adhered to modes and forms with a degree of obstinacy, and in some instances to the exclusion of the common principles of justice.

Before the statute of James I. the rule as contended for by the plaintiff's counsel, was general. By that statute it was first enacted that in actions brought against certain officers, therein named, and their assistants, for any act done in their respective offices, the defendant might plead the general issue, and give in evidence, any special matter, which, had it been pleaded, would have been sufficient to have discharged the defendant of the trespass. Inconveniences had doubtless been experienced, in a rigid adherence to the rule now under consideration, for the remedy of which this statute was made. It was made in favour of certain officers only, who were frequently exposed to vexatious suits for acts done in the execution of their several offices. The expense, delay and vexation of pleading specially a justification in every such case, must have been extremely burdensome. Besides, so strict were the rules of pleading held, both as to matter of form and substance, that few cases could

Chittenden,
January,
1797.

Wilcox
vs.
Sherwin.

come to trial on their real merits. For this reason it was in the power of a few litigious persons to ruin an officer in publick trust, though acting with the utmost integrity and the fullest knowledge of his duty.

After a long experience in practice upon this act, their Legislature have, in numerous acts, extended the benefit to persons making entry and distress for rents and services, and to almost every person exercising any inferior office or trust of a public nature. This is a strong evidence of the benefit there derived from the alteration in the law, and that those inconveniences which might have been apprehended from the alteration did not follow in practice. These acts do not extend to Sheriffs or to any officers serving process issuing out of the Superior Courts, or what are called the King's writs. One reason was, that it is less troublesome to plead a justification in the cases last mentioned, for he who had the King's writ had only to shew a good writ, with his return as a sufficient justification; but officers acting under a derivative authority, are holden to shew the authority by virtue of which they acted, and all the proceedings under it to be good and legal in every particular. Besides, the power and authority of the Sheriffs rendered them less liable to vexatious suits.

As to the second argument drawn from the inconveniences, which, it is supposed will attend a relaxation of the rule in this case, the statute of James and its extension by numerous succeeding statutes, will take off much of its weight. It is said that the proposed relaxation of the rule in this case, will often operate as a surprise on the plaintiff—that he will have no means of knowing what defence will be set up, until the very moment of trial, so that he must often come unprepared to meet the defendant on the ground which he has taken without notice.

We do not extend the present question to a subsequent matter, as a release by which the defendant may avoid the consequences of the trespass charged by the plaintiff. We confine it to matters existing at the time of the trespass charged, and which, if established, will prove that the defendant has done no wrong, but acted legally and right by virtue of a good authority. Under this limitation, the above position, that the proposed relaxation of the ancient rule, will operate to take the plaintiff by surprise, will be found destitute of

*Chittenden,*
January,
1797.

Wilcox
*vs.*
Sherwin.

foundation.   These appointments are not made, nor is the authority under which the officers claim to act, conferred in secret—they are matters of sufficient notoriety.   Actions like the present are always brought to try the validity of the authority claimed, or, to recover damages for some excess or abuse in the exercise of that authority.  It would rather be a matter of surprise to the plaintiff, if the defendant should not attempt to justify.   The action, I may say, is always brought under this expectation, and the plaintiff prepares himself accordingly.

But, it is said that the plea of not guilty, goes only to a denial of the facts charged in the declaration, and therefore, ought to put the plaintiff to the proof of those facts only.   I know it has been held, that the plea of not guilty amounts to a denial only of the facts, and is the only reason given why matters of justification should not be given in evidence under such plea.   But, a moment's attention will discover this to be a mere technical construction, and much narrower than the expression imports in the common use of language. The plain and obvious meaning is, that the defendant has done no wrong in the case.   It may be that he has done the acts, or that he has done them in the manner charged ; but if he had a good and legal authority, and acted within the limits of that authority, and indeed was bound in duty to do the acts which he did, it is absurd to say that he is in any sense guilty ; for where there is no wrong there can be no guilt.   We have only to decide, that we will understand things in Courts of law, as they are understood by the rest of the world ; and the danger of a surprise in such case will, at once, vanish.   A release, accord, and other matters subsequent to the trespass, which do not go to modify the facts charged, but take away the remedy only, seem to have a different consideration.

Why should there be more difficulty upon this point, in the action of trespass, than in the action of trover ?  Trover will lie in every case, where trespass will lie, for goods tortiously taken, with or without pretence of authority.—Indeed it is now the action most in use for trying the right to personal property, taken under pretence of authority, especially if the object is only to recover damages for the goods.   In trover the general issue is usually pleaded, and the special matter given in evidence.   Indeed, there is no matter of justification which the defendant, in trover, may not give in evi-

dence under the general issue, and it has never been thought a <span>*Chittenden,*</span> ground of complaint: on the contrary, for this very reason, the <span>January, 1797.</span> action has been encouraged, and has come into very general use in cases like the present.   From the nature of the thing, there is as much danger of surprise in one case as the other—the difference in this respect is not in the nature of the action, but in the rules which have been adopted for the admission of evidence.

*Wilcox vs Sherwin.*

It is not apprehended that the Court will find themselves embarrassed in deciding, on trial, what matters are admissible in evidence, as good and legal justification, any more in the action of trespass, than in the action of trover.   These are matters, which, as to the substance, have long been fully ascertained and settled. Indeed, it will be found that the principal difficulties which have occurred, have arisen from the great nicity required in pleading, by which justice is often entangled in a net of forms.   As it will be in the power, so it will be the duty of the Court, if the defendant should offer to prove any matter, which, if established, would be improper. or insufficient to justify him in the action, to reject the evidence and not suffer it to go to the Jury.

It has been observed, that the practice of giving matter of justification in evidence, under the general issue, in actions of trespass, either from the inattention of the parties, or, from an apprehension that the law was so, has already prevailed in some degree.   That the practice has prevailed in some degree, is true.   The history of it is this :—There was a law of this State passed in February, 1779, copied from a law in Connecticut, by which the defendant, in any action, was permitted to give in evidence, under the general issue, any special matter proper to his defence or justification, excepting a release, discharge, or other matter whereby the defendant was saved in the action by the act of the plaintiff.   The practice was adopted under this law, while it continued in force, which was until march, 1787, when on a revision of the laws, it was repealed. After the repeal, the practice which had obtained under the statute, was in some instances continued without any objection, and without any decisions on the point, within my knowledge.   This was the case in Spaulding against Marsh, in which I was of counsel for the plaintiff.   The law was not, however, generally considered to be so ; for sometimes the parties made particular agree-

ments, that any special matter might be given in evidence under the general issue.

Upon these considerations, the Court are unanimous in the opinion, that the defendant in this case be admitted to give in evidence to the Jury, the matters which his counsel have stated, in his justification.

The defendant's counsel, as before, admitted the taking of the property, and again stated their defence.    That the defendant, who was and is an inhabitant of the town of Charlotte, was legally appointed a collector of the town for the years 1794 & 95.—That before the taking of the property mentioned in the declaration, the selectmen of Charlottee committed to him two rates to collect—one for the year 1794, the other for the year 1795, for the purpose of paying the salary due from the town to Mr. Gillet, their settled minister, for those two years.—That the rates were contained in two rate-bills made out by the selectmen of Charlotte.—That a warrant was annexed to the two rate-bills, signed by ——— Justice of the Peace, directing him the defendant, as collector, to collect the same.—That the plaintiff was assessed in each of those rate-bills, and because he refused to pay said rates, he the defendant, by virtue of said warrants, took the said heifer as the property of the plaintiff, and sold the same as the law in such cases directs, which they relied on as a sufficient defence, if proved.

The counsel for the plaintiff objected, and insisted that to entitle the defendant to give the warrant and rate-bills in evidence, he must first shew that the taxes mentioned were legally granted by the town of Charlotte.—That for this purpose it would be necessary to go into the settlement of the minister by the town, that it might be seen whether every thing had been done agreeably to the statute in such case provided.—That all this would have been necessary in pleading, and although the defendant is allowed to justify without pleading specially, yet the same matters in substance, which would have been necessary in pleading, will be necessary in proof, under the general issue.—That they understood that the decision of the Court relative to the mode of practice in this case, did not affect the subject matter of the justification.—That the defendant now offered to justify under an authority, and to carry into execution an act

Chittenden,
January,
1797.

Wilcox
vs.
Sherwin.

of a corporation, in doing which, it would be necessary, according to well known and established principles of law, to shew that the whole was legally right. 1 Esp. 103—4—5.

The defendant's counsel said in reply, that a collector is a known officer—he is bound to obey his warrant.—That there is no reason why a legal warrant should not be as sufficient to justify a collector of taxes, as a legal writ to. justify a Sheriff or other officer serving legal process. The treasurer's warrant would be sufficient to justify a collector of State taxes. A collector of a corporation, has by statute the same powers, the same duties to perform, and of course the same indemnity, and could not be held liable for the acts of the corporation or even of the assessors : if either of these have done wrong, the action should be brought against one or the other accordingly.

The counsel for plaintiff replied—This differs from civil process issued by a Court or magistrate having competent jurisdiction. In that case, the writ issues under a general and known law of the State, from a known authority. The officer to whom it is directed, is bound to obey the precept, and shall therefore be justified by it. But the acts of a corporation are known to their own members only—to others, they are private acts, and to be known, must be proved. This case differs likewise from that of a collector of State taxes.—The Treasurer issues his warrant for the collection of a tax, under publick and known laws, of which the Court are ex officio bound to take notice. A collector of a state tax, therefore, need not shew the law which is among the publick acts of the State. This warrant is sufficient for him.

HALL, J. In this case the warrant and rate-bill, or bill of assessment, are sufficient to justify the collector. I can see no distinction between this case and that of an officer serving civil process, or a collector of State taxes with a Treasurer's warrant. A town officer is an officer known in law. A Justice of the Peace is empowered to issue such warrant for the collection of town taxes; and the collector is, by law, compelled to collect the rate committed to him with the warrant, and is made accountable for it without any exception. It would be very hard, as he is not allowed to judge of the legality, that he should be in any way answerable for any wrong

11

*Chittenden,*
January,
1797

*Wilcox*
*vs*
*Sherwin.*

which either the town, or the selectmen, or whoever were the assessors should have committed. If the town proceeded illegally in granting a tax, or if the selectmen have made an illegal assessment on any one, an action, if brought, should be against the town or selectmen as the case may be, and not against the collector.

I am therefore of opinion, that it is a sufficient justification for the collector to shew a warrant and a rate-bill apparently legal.

CHIPMAN, Ch. J. A warrant and rate-bill are not sufficient to justify a collector of town taxes. There appears to be a clear and sensible distinction between the case of a town collector, and that of an officer serving civil process, issued by authority of competent jurisdiction, or of a collector of State taxes under a warrant from the Treasurer of the State. In those cases, no question can arise, except whether the party applying have complied with what the law makes a prerequisite, and of this, the authority signing is the Judge. Nothing depends on any preceding act of any man, or body of men to lay a foundation for its legality. An officer serving civil process is merely executive. If he receive a writ apparently legal, & within the jurisdiction of the authority signing it, he is bound to obey its precept. If there be any illegality not apparent on the face of the writ, the plaintiff and the authority issuing the same, may be liable, not the officer serving it.

When a state tax is granted, it is granted by a publick act of legislation, and the Treasurer is empowered by a publick law of the State, to issue his warrant for the collection of such tax, to the first Constables of the several towns, who, by law, are made collectors of State taxes in their respective towns. The grant of the tax, the power of the Treasurer to issue warrants, and the powers of the Constables, as collectors of State taxes, are by publick laws, of which the Courts are bound to take notice *ex officio.* A collector of a State tax, therefore, need only to shew his appointment and the Treasurer's warrant in his justification, should he be sued for executing such warrant. All the rest is matter of law, not of evidence. But, should the Treasurer issue his warrant to the first Constable of a town, directing him to collect a tax of the inhabitants of the town, when no such tax had been granted by the Legislature, and an action should be brought against the Constable for taking property thereon, his warrant would be no justification.

The Court are equally bound, *ex officio*, to take notice that there *Chittenden*, is no law granting the tax. The power of the Treasurer to issue January, 1797. warrants for the collection of taxes, is given only in cases of taxes granted by law; and it can never be admitted, that any person is Wilcox *vs* ignorant of the existence of the publick acts of the Legislature of Sherwin. the State.

The corporate powers of towns are certainly of publick notoriety in the laws of the State; but the corporate acts of any town, are to all but the inhabitants, who are members of the corporation, private acts—they are unknown to others. Courts can know nothing of them but by proof. They are not matters of law, but of fact—the effect of which is to be determined upon legal principles.

The power of a town, as a corporation, is not general; it is limited both as to the subject matter and the mode of exercising it. For instance, should the inhabitants presume to vote a tax to raise a sum of money, for the purpose of setting up a manufactory, the subject not being within the powers given by law to towns, the vote would be illegal and void.

The mode of calling town meetings is prescribed by law.—Should the selectmen, therefore, instead of setting up a notification for calling a town meeting, as the law directs, only order a proclamation for that purpose to be made, at some publick place, or should they warn the meeting to be holden within three days only, after setting up a notification, and upon such notification should hold a meeting, in either case every thing done at such meeting would be illegal and void. It would no more bind the inhabitants, nor have any more the force of a corporate act, than the agreement of half a dozen individuals, accidentally met at a private house. For these reasons, the doings of a town ought to be shewn by any person who justifies by an authority in any way derived from them.

The power to issue warrants for the collection of town taxes, is not incidental to the office of Justice of the Peace; it is given by statute, and is given only in cases where taxes have been granted. The power might as well have been given to the town treasurer, and perhaps with more propriety. The Justice is, in this case, a mere instrument. He ought, doubtless in every case, before he issues a warrant for the collection of a tax, to be satisfied that a vote has been passed granting such tax. Should he issue a warrant in a

*Chittenden,*
*January,*
*1797.*

*Wilcox*
*vs*
*Sherwin.*

case where no tax had been voted, he would certainly be liable for the consequences. But, if a tax has been voted, I apprehend he is not bound to judge of the legality of the vote, and would not in any way be accountable for its legality.

The town collector could no more justify the collecting a tax by virtue of a warrant from a Justice of the Peace, when the town had granted no such tax, than a Constable could justify collecting a State tax, on the Treasurer's warrant issued without any law, granting such tax. The difference is, that in the latter case, the Court takes notice, as a matter of course, whether any law exists granting such State tax or not. In the former case the Court have no knowledge of what the town have done, until it be shewn in pleading or in evidence ; and until this be done, they must go upon the maxim, that what appears not to them, has no legal existence.

It may further be observed, that towns and all other corporations, exist as such, and derive their power from the law solely. They are artificial bodies—their powers are not general, at the pleasure of the members, nor are they inherent : while they act agreeably to their legal powers, their acts are within their proper limits, as valid and binding as the general laws of the State : when they do not proceed agreeably to their legal powers, their proceedings are absolutely null and void, nor have they the least force to authorise, justify, or excuse any officer who shall attempt their execution.

If an action of trespass might be maintained against a town in a corporate capacity, it would deserve consideration in this case. But no action of trespass can be maintained against a corporation—this follows from what has been before observed. If the members of a corporation, though ever so formally assembled, do, or agree to do, an act which is illegal and wrong, the law will not consider it as the act of the corporation, but of the acting individuals in their natural capacities. As such act binds no one, so it authorises no one to carry it into effect ; and if an injury ensue, all who act in the business are volunteers in the injury.

These I take to be the principles of the common law, as old as the law itself—principles which are not subject to the controul of the Court, nor in the power of the Court to alter without legislative aid. If an action will not lie against the acting members in this case, there is an injury without a remedy. The collector is, and must

be an inhabitant and member of the town, and in cases like the pres- *Chittenden,* ent, he is clearly an acting member—indeed, the only member im- January, 1797. mediately acting, in what is charged to be an injury. As such, he is liable, if any one can be liable, either by himself or jointly with Wilcox *vs* others. Whether a collector would be answerable for an injury Sherwin. arising to any one by an unjust or unequal assessment, is a question which does not arise in the present case.

As to the proceedings of the town, in settling their minister, I think we have nothing to do with them, in this case; for let the mode of proceeding in the settlement be what it may, if the minister continued to preach to them by agreement, or consent, he was entitled to a compensation, and the town had a right to vote a tax for the purpose of making him a compensation.

Another argument I ought to have noticed, which was urged by the counsel for the defendant, and seems to have weight with my brother Hall. It was said that collectors are obliged to collect all taxes committed to them, and are made accountable for them without any exception—that as this puts the legality of the tax out of the question, with a collector, he ought not to be made liable if it be illegal. The words of the statute are, " All collectors of rates shall gather and pay the rates to them committed for collection, by such times, and to such persons, as they shall be directed in their respective warrants; and if any collector or collectors shall not perform the trust committed to him or them, according to law, he or they shall be accountable for such rate, or such arrearages thereof, &c." I cannot think that this paragraph affects the present question. It was designed solely to point out the duty of collectors, in collecting taxes, and to enforce their performance. It could not be intended to indemnify collectors of towns, in distressing the inhabitants with the collection of pretended taxes, which had never been granted; and an illegal grant, in this case, and no grant, have the same legal effect.

Such a construction would be very arbitrary, and would open a door to very great injustice. In the act regulating the office and duty of Sheriffs, it is enacted " That Sheriffs and Constables shall receive all manner of writs, at any places and at any times, within the limits of their jurisdictions, when and wheresoever they shall be tendered to them, and shall execute the same, according to the di-

*Chittenden,*
*January,*
*1797.*

*Wilcox*
*vs*
*Sherwin.*

rection therein given." The expression in this act is stronger than in the act before recited; yet, surely, no one will suppose that the Sheriff or Constable is bound to receive or execute a writ, apparently illegal, or that either of them would be indemnified in arresting the body or seizing the property on such illegal writ. The law recognizes no writs but such as are legal.

For these reasons, I am of opinion, that it is necessary for the defendant to shew a tax or taxes legally granted by the town of Charlotte, before he can offer in evidence the rate-bills and warrant, which are his immediate authority for collecting the same.

WOODBRIDGE, J. agreed in opinion with HALL, J. and gave the same reasons.

The counsel for defendant then produced two warrants, dated February 24, 1794 and 95, and the rate-bills to which the warrants severally referred. It also appeared in evidence, that the selectmen who had signed the rate-bills, had been legally chosen and sworn.

The counsel for the plaintiff took an exception to the warrants and rate-bills, as being illegal on the face of them. The warrants appeared to be signed by —— Strong, Justice of the Peace, directed to the defendant as collector of the town of Charlotte, and commanding him to collect the rates as assessed in the respective rate-bills, as referred to in each warrant, but neither of the warrants mentioned any tax to have been granted or voted by the town. On one rate-bill was endorsed "Mr. Gillet's rate for 1793"—on the other, "Mr. Gillet's rate for 1794," and each bill was subscribed by the selectmen of Charlotte. It was insisted, that as no mention was made in the warrants, of any vote or grant of a tax or taxes, they were not sufficient for the defendant.—That in the former question it was supposed that the warrants would shew that the several taxes had been granted by the town, but on their being produced it appeared otherwise.

The Court, after hearing an argument on this point, were of opinion, that these warrants were not on the face of them legal.

The counsel for defendant then offered in evidence the proceedings of the town in the settlement of Mr. Gillet, in the year ——. The town had regularly voted to give Mr. Gillet, on his settlement

as their minister, a certain sum by way of settlement, and a certain <span style="float:right">*Chittenden,*<br>January,<br>1797.</span> sum (which was the sum contained in each of the rate-bills produced) yearly, for his support, and offered to shew that Mr. Gillet was settled and ordained accordingly.

Wilcox<br>*vs.*<br>Sherwin.

The counsel for the defendant said, there was no necessity, that in such case, a tax should be directly voted by the town.—That when the town had agreed with a minister for a certain sum annually, the statute for supporting ministers of the gospel made it an annual tax on the town.  By that statute, every town and parish are authorised, among other things, to settle a minister, " and further to vote such minister such settlement and annual support in money, or otherwise, as shall be agreed upon between such minister and people, and as it shall be found necessary, to be assessed on the polls and rateable estates of persons living and estates lying within such town or parish."—That nothing more was necessary, than that the town should vote the minister a certain sum annually, and the statute directs in what mode it shall be raised, by an assessment on the polls and rateable estates of the inhabitants, as there prescribed.— That such vote was equivalent to the grant of an annual tax, to the amount agreed upon, and so long as the minister should continue to preach agreeably to the settlement.

The plaintiff's counsel in reply, observed that this was a contract only between the town and Mr. Gillet ; at least it became so on Mr. Gillet's compliance—it has nothing to do with the mode of raising the money.  The most that can be made of the statute is, that it authorises a town to vote a tax or taxes, to enable them to fulfil their contract, if it should be necessary to raise the money in that mode.

HALL, J.  I consider it doubtful whether the statute intended that a tax should be levied from year to year, to enable the town to fulfil their engagement, without any further vote of the town, but am of opinion that the whole should be left to the Jury.

CHIPMAN, Ch. J.  I am clearly of opinion, that the clause which has been recited, will not bear the construction contended for by the defendant's counsel.  The town might have other means of raising the money, and the minister might be settled with that view. The clause recited seems principally intended to designate the fund

*Chittenden,*
*January,*
*1797.*

*Wilcox*
*vs.*
*Sherwin.*

out of which the town or parish might raise the money if it should be voted, and the persons who should be liable to be taxed in such case. It would be giving great latitude of construction, to say that it authorised the town or parish, where they should vote a settlement and annual support for the minister, to vote also that the same should be collected from time to time, as it should fall due. But it does not appear that the town of Charlotte has done this. I consider this to be properly a question of law, which it is the duty of the Court to decide. Where a doubt arises on the weight of evidence to prove certain facts, which as they may be found, would bring the case within certain rules of law, or not, it is the province of the Jury to decide, that is not the present case. The question now before the Court, is a previous question of law, independent of any fact to be found by the Jury.

The evidence, therefore, offered by the defendant, ought not to go to the Jury.

WOODBRIDGE, J, was of the same opinion.

Verdict for the plaintiff.